IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AARON QUINN ELLIOTT,            )
                                 )
        Plaintiff,               )
                                 )
    v.                           )  Civil Action No. 17-235
                                 )
CAROLYN W. COLVIN, ACTING        )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
        Defendant.                )

O R D E R

AND NOW, this 27th day of March, 2018, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it

would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] The Court finds no merit in Plaintiff's various arguments that the Administrative Law Judge ("ALJ") erred in finding him to be not disabled, and finds that substantial evidence supports the ALJ's decision.

Plaintiff's arguments are somewhat intertwined, but it is clear that he alleges that the ALJ erred by affording insufficient weight to the opinions of his consultative examiner, Lindsey Groves, Pys.D., and of two of his treating physicians, Saghir Ahmad, M.D., and Gowri Arul, M.D. He argues that these opinions support a finding that he meets Listings 12.04 and 12.06, 20 C.F.R. pt. 404, subpt. P, App. 1, and demonstrate that the residual functional capacity ('RFC") and hypothetical question formulated by the ALJ were insufficient, particularly in regard to Plaintiff's post traumatic stress disorder. The Court disagrees and finds that the ALJ adequately explained the rationale for assigning weight to the opinion evidence as he did, in finding that Plaintiff did not meet Listings 12.04 and 12.06, and in formulating Plaintiff's RFC.

It is true that when assessing a claimant's application for benefits, the opinions of the claimant's treating physicians generally are to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the regulations in place at the relevant time provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. (The Court notes that Sections 404.1527 and 416.927, rather than Sections 404.1520c and 416.920c, apply since Plaintiff's claims were filed before March 27, 2017.) As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429.

It is also important to remember that:

> The ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]" Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well.

2

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (internal citations omitted in part). Here, the ALJ included in his decision a substantial discussion as to why he gave the weight that he did to the various medical opinions. Substantial evidence supports his findings in determining that Plaintiff did not meet Listings 12.04 and 12.06 and in formulating the RFC and hypothetical question to the vocational expert ("VE").

Plaintiff asserts that Dr. Groves, on February 19, 2016, opined that he satisfied the criteria to meet Listings 12.04 and 12.06 at Step Three of the sequential analysis, specifically that he had marked restrictions in maintaining social functioning and that he had four or more episodes of decompensation, each of extended duration. (R. 513). (The Court notes that Listings 12.04 and 12.06 were revised significantly effective January 17, 2017. See Revised Medical Criteria for Evaluating Mental Disorders, 81 F.R. 66138-01, 2016 WL 5341732 (Sept. 26, 2016). However, this Court will review the ALJ's decision using the rules in effect at the time the decision was issued. See id. at 66138 n.1.) As the ALJ explained in his analysis of this issue, in order to satisfy these listings as they existed at the relevant time, Plaintiff's impairments have to have resulted in at least two of four of the following limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (R. 22). See 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 12.04, 12.06 (2016). The ALJ further explained that repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. (R. 22-23). See 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00.C.4 (2016). While Dr. Groves does contend that Plaintiff meets two of the four criteria, the ALJ thoroughly discussed why he rejected both of these findings by Dr. Groves, pointing out that such limitations are inconsistent with Dr. Groves' own clinical findings, with her finding that Plaintiff had a Global Assessment of Functioning ("GAF") score of 58, and with the records of Dr. Ahmad and Jeffrey Turgeon, PA-C. (R. 23).

Indeed, even assuming the ALJ should have accepted Dr. Groves finding of marked limitations in maintaining social functioning, Dr. Groves' opinion regarding episodes of decompensation simply does not line up with the requirements of Listings 12.04 and 12.06. As the ALJ explained, to meet the fourth criterion of these listings, there must be evidence of three or more episodes of decompensation *in a single year*, or an average of once every four months, each lasting for at least two weeks. (R. 22-23). The ALJ correctly pointed out at the hearing that, Dr. Groves' opinion notwithstanding, the record simply does not establish any such episodes, let alone four. (R. 79-80). He asked for clarification from Dr. Groves as to what she meant in regard to the opined episodes of decompensation, and she indicated that she "assumed" that such episodes had occurred, and showed no awareness of the requirement for the episodes to have occurred within a twelve-month period. (R. 520). Therefore, Dr. Groves' opinion, and the other record evidence, simply does not support that Plaintiff satisfied this criterion and that he therefore met Listings 12.04 and 12.06.

As to the impact of the opinion of Dr. Groves on the formulation of the RFC and hypothetical question to the VE, the ALJ likewise adequately explained the basis for factoring Dr. Groves' opinion the way he did. As discussed above, the ALJ remarked that Dr. Groves'

opinion was inconsistent with her own clinical findings, with her finding that Plaintiff had a GAF score of 58, and with the other objective medical record evidence. (R. 23, 33). He also noted that Dr. Groves did not have a sustained treatment relationship with Plaintiff, but rather performed a one-time consultative examination at Plaintiff's counsel's request. (R. 32). Despite all this, the RFC and hypothetical question largely accounted for Dr. Groves' opinion. The Court finds that substantial evidence supports these findings.

The "opinions" of Drs. Ahmad and Arul to which Plaintiff refers are actually not opinions as to Plaintiff's functional capacity, but are rather merely GAF scores. GAF scores do not directly correlate to a determination of whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. 50746, 50764-65. While under certain circumstances a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. See Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003). GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See id.; Zachary v. Barnhart, 94 Fed. Appx. 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Power v. Astrue, 2009 WL 578478, at *8 (W.D. Pa. Mar. 5, 2009). For instance, a GAF score between 41 and 50 reflects "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR** any serious impairment in social, occupational, **or** school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000)(emphasis added). Accordingly, the mere fact that a treating mental health care provider assigned certain GAF scores would not necessarily indicate that Plaintiff is disabled. Nonetheless, a GAF score is evidence that an ALJ should consider in determining a claimant's impairments and limitations in setting forth the claimant's RFC and in fashioning a hypothetical question to the VE. See Irizarry v. Barnhart, 233 Fed. Appx. 189 (3d Cir. 2007).

Of course, an ALJ need not discuss every piece of evidence in the record, see Fargnoli, 247 F.3d at 42, and GAF scores are not afforded any unique status in that they must expressly be discussed and analyzed in all cases. The Court must look at the overall context. For instance, in Gilroy v. Astrue, 351 Fed. Appx. 714 (3d Cir. 2009), the Third Circuit Court of Appeals held that remand was not required where the ALJ did not reference a GAF score of 45 assigned by the treating psychiatrist where the ALJ did refer to observations from the psychiatrist's reports and where the psychiatrist did not explain the basis for the GAF score.

Here, the ALJ did expressly discuss the GAF score of 45 assigned to Plaintiff by Dr. Ahmad. He explained that the score had been assigned at the beginning of Plaintiff's treatment

4

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 9) is DENIED and that Defendant's Motion for Summary Judgment (document No. 11) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf:  Counsel of record

---

and had not been updated. He also noted Dr. Ahmad's notes showing that Plaintiff was less limited once he began taking medication. He further discussed the fact that Plaintiff had more recently been assigned scores of 52 and 58. (R. 33- 34). While the ALJ did not specifically discuss the one-time GAF score of 50 assigned by Dr. Arul, Dr. Arul did not explain the basis for the score and did not opine that Plaintiff had any functional limitations. Moreover, the Court notes that the ALJ did discuss the GAF scores generally at significant length, including scores both higher and lower than the one assigned by Dr. Arul. (R. 33-34). This was simply not a situation where the ALJ was cherry-picking or ignoring medical assessments that ran counter to his finding. See Rios v. Commissioner of Soc. Sec., 444 Fed. Appx. 532, 535 (3d Cir. 2011).

More importantly, Plaintiff has not demonstrated how any of the limitations contained in the RFC are contradicted by the GAF scores assigned by Drs. Ahmad and Arul. Neither treating physician offered any opinion setting forth what Plaintiff's actual work-related limitations would be. Moreover, since a GAF score does not directly correlate to a finding of disability, and since a GAF score can mean many things, there would be no basis for including the score itself in the RFC. While a GAF score can assist an ALJ in understanding the limitations contained in the opinions of medical professionals, the actual number itself does little to describe the specific functional limitations caused by the claimant's impairments. See Howard, 276 F.3d at 241 ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). It is the limitations faced by a claimant, and not an ambiguous GAF score, that must be included in the RFC and hypothetical. The RFC and hypothetical question in this case contained numerous limitations based on Plaintiff's mental health impairments. (R. 24). In sum, the ALJ's discussion of the GAF scores, and his formulation of the RFC and hypothetical question, were more than adequate in this matter.

Plaintiff also makes passing reference to the ALJ having inadequately evaluated his credibility, but does not really develop this argument. Suffice to say, the ALJ's analysis was consistent with Social Security Ruling 16-3p, 2017 WL 5180304, and supported by substantial evidence.

Accordingly, for all of the reasons stated herein, the Court affirms the ALJ's decision.